**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **CHARITABLE DAF FUND, L.P.** | § | |
| **and CLO HOLDCO, LTD.,** | § | |
| *directly and derivatively,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CAUSE NO. 3:21-cv-00842-B** |
| | § | |
| **Highland CAPITAL MANAGEMENT,** | § | |
| **L.P., Highland HCF ADVISOR, LTD.,** | § | |
| **and Highland CLO FUNDING, LTD.,** | § | |
| *nominally,* | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS COMPLAINT**</u>

**SBAITI & COMPANY PLLC**

*/s/  Mazin A. Sbaiti*
**Mazin A. Sbaiti**
 Texas Bar No. 24058096
**Jonathan Bridges**
 Texas Bar No. 24028835
J.P. Morgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
   jeb@sbaitilaw.com

**Counsel for Plaintiffs**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 5

IV.  THE PRECLUSION DOCTRINES DO NOT APPLY ...................................... 5

    A.  Highland's Preclusion Defenses Fail ....................................................... 5

        1.  *Res Judicata* Does Not Apply Because the Court's 9019
           Order Does Not Specifically Release Plaintiff's Claims or
           Resolve them on the Merits ............................................................. 6

        2.  The Bankruptcy Court Was Not a Court of Proper Jurisdiction
           to Hear the Causes of Action .......................................................... 9

        3.  The Claims Do Not Arise Out of the Same Nucleus of
           Operative Facts ............................................................................. 10

        4.  Highland's Litany of Attachments Changes Nothing ................... 10

    B.  Judicial Estoppel Fails ........................................................................... 12

V.  PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF ............................... 13

    A.  The Motion Fails Under Rule 12(g) and is Premature ........................... 13

    B.  Plaintiffs Have Pled Claims for Breach of Fiduciary Duty ................... 13

        1.  The Complaint Pleads that Highland and HCFA Owe
           Fiduciary Duties Under the Advisers Act and Other
           Bases ............................................................................................. 14

        2.  The Fiduciary Duties Imposed by the Advisers Act Are
           Actionable Under Texas Law and Are Owed to Investors
           Like CLO Holdings ...................................................................... 16

        3.  Plaintiffs Have Alleged Several Breaches of Fiduciary
           Duty .............................................................................................. 20

        4.  Rule 9(b) Does Not Apply—But Even if it Did, it Has Been Met ............. 22

C.     Plaintiff CLO Holdco Has Pled a Claim for Breach of Contract and Tortious Interference ..................................................................................23

D.     Plaintiffs Have Pled a Claim for Negligence .........................................25

E.     Plaintiffs Have Pled a Cause of Action Under RICO .............................25

      1.     Highland is a "RICO" Person ....................................................26

      2.     Plaintiffs Have Pled a RICO "Enterprise" ...............................26

      3.     Plaintiffs Have Pled a Pattern of Racketeering Activity With Particularity ....................................................................27

      4.     Plaintiffs Have Pled a Basis to Infer Scienter ..........................31

      5.     Plaintiffs Have Pled Injury to Their Business or Property Due to the RICO Violations .........................................................32

      6.     Highland's Defenses Are Legally Infirm or Improper at the 12(b)(6) Stage ..........................................................................33

VI.     MOTION FOR LEAVE TO AMEND .................................................................34

VII.     CONCLUSION ...................................................................................................35

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abraham v. Singh,*
   480 F.3d 351 (5th Cir. 2007) ..................................................................................25, 27

*Aloe Creme Labs., Inc. v. Francine Co.,*
   425 F.2d 1295 (5th Cir. 1970) ........................................................................................19

*Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.),*
   203 F.3d 914 (5th Cir. 2000) ........................................................................................ 6-7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................................5

*Basic Capital Mgmt. v. Dynex Commer., Inc.,*
   402 S.W.3d 257 (Tex. App.—Dallas 2013).................................................................24

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................................................................................5

*Belmont v. MB Inv. Partners, Inc.,*
   708 F.3d 470 (3d Cir. 2013)....................................................................................17, 18

*Benson & Ford, Inc. v. Wanda Petroleum Co.,*
   833 F.2d 1172 (5th Cir. 1987) ......................................................................................11

*Bridge v. Phx. Bond & Indem. Co.,*
   553 U.S. 639 (2008).................................................................................................32, 33

*Chalmers v. Gavin,*
   No. 3:01-CV-528-H, 2002 U.S. Dist. LEXIS 5636 (N.D. Tex., Apr. 2, 2002) ........................8

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) ..........................................................................................5

*Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),*
   68 F.3d 914 (5th Cir. 1995) .............................................................................................8

*Crowe v. Henry,*
   43 F.3d 198 (5th Cir. 1995) ....................................................................................26, 27

*Cudd Pressure Control, Inc. v. Roles,*
   328 F. App'x 961 (5th Cir. 2009)...................................................................................14

*Davis v. Dall, Area Rapid Transit*,
  383 F.3d 309 (5th Cir. 2004) ...................................................................6

*Douglass v. Beakley*,
  900 F. Supp. 2d 736 (N.D. Tex. 2012) ..................................................16

*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir. 1981) ................................................................34

*Fuqua v. Taylor*,
  683 S.W. 2d 735 (Tex. App.—Dallas 1984)..........................................16

*Goldenson v. Steffens*,
  No. 2:10-cv-00440-JAW, 2014 U.S. Dist. LEXIS 201258 (D. Me. 2014)..............................17

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ................................................................13

*Hand v. Dean Witter Reynolds, Inc.*,
  889 S.W. 2d 483 (Tex. App.—Houston [14th Dist.] 1994)...................16

*Harrison Co. LLC v. A-Z Wholesalers, Inc.*,
  No. 3:19-CV-1057-B, 2021 U.S. Dist. LEXIS 44534 (N.D. Tex. 2021) ......................... 12-13

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984).................................................................................5

*In re Alfonso*,
  No. 16-51448-RBK, 2019 Bankr. LEXIS 2816 (Bankr. W.D. Tex. 2019) ..............................8

*In re Katrina Canal Breaches Litigation*,
  495 F.3d 191 (5th Cir. 2007) ................................................................26

*In re Texas Extrusion Corp.*,
  844 F.2d 1142 (5th Cir. 1988) ................................................................8

*Jackson v. Dear and Seven Others*,
  [2013 GLR 167] Guernsey Royal Ct. ......................................................14

*Jacobsen v. Osborne*,
  133 F.3d 315 (5th Cir. 1998) ................................................................35

*Laird v. Integrated Res.*,
  897 F.2d 826 (5th Cir. 1990) ...........................................................16, 17

*Lampkin v. UBS Painewebber, Inc. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*,
   238 F. Supp.3d 799 (S.D. Tex. 2017) ...................................................................16

*Leffall v. Dallas Indep. Sch. Dist.*,
   28 F.3d 521 (5th Cir. 1994) .................................................................................35

*Lovelace v. Software Spectrum*,
   78 F.3d 1015 (5th Cir. 1996) ...............................................................................11

*Memphis-Shelby  Cty. Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*
   783 F.2d 1283 (5th Cir. 1986) ............................................................................ 5-6

*Nabors Drilling, U.S.A., Inc. v. Escoto*,
   288 S.W.3d 401 (Tex. 2009).................................................................................25

*Navigant Consulting, Inc. v. Wilkinson*,
   508 F.3d 277 (5th Cir. 2007) ...............................................................................14

*Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*,
   801 F.3d 530 (5th Cir. 2015) .................................................................................9

*Petras v. Mole*,
   Civil Action No. 3:11-CV-1402-N, 2012 U.S. Dist. LEXIS 207745
   (N.D. Tex. 2012).......................................................................................... 11-12

*Pool v. Johnson*,
   Civil Action No. 3:01-CV-1168-L, 2002 U.S. Dist. LEXIS 6613
   (N.D. Tex. 2002)..................................................................................................15

*R.A.G.S. Couture, Inc. v. Hyatt*,
   774 F.2d 1350 (5th Cir.1985) ..............................................................................33

*Reneker v. Offill*,
   No. 3:08-cv-1394-D, 2010 U.S. Dist. LEXIS 38526 (N.D. Tex. Apr. 19. 2010)...................11

*Reynolds v. Tombone*,
   Civil No. 3:96-CV-3330-BC, 1999 U.S. Dist. LEXIS 9995
   (N.D. Tex., June 24, 1999)......................................................................................8

*Risby v. United States*,
   No. 3:04-CV-1414-H, 2006 U.S. Dist. LEXIS 8798 (N.D. Tex. 2006) ............................7, 10

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994)....................................................................................27

*Sassen v. Tanglegrove Townhouse Condo. Ass'n,*
 877 S.W.2d 489 (Tex. App.—Texarkana 1994) .................................................15

*Scanlan v. Texas A&M Univ.,*
 343 F.3d 533 (5th Cir. 2003) ...............................................................................5

*S.E.C. v. Blavin,*
 760 F.2d 706 (6th Cir. 1985) ......................................................................17, 20

*SEC v. Capital Gains Research Bureau, Inc.,*
 375 U.S. 180 (1963) ....................................................................................17, 22

*Snowden v. Wells Fargo Bank, N.A.,*
 No. 3:18-cv-1797-K-BN, 2019 U.S. Dist. LEXIS 23557
 (N.D. Tex. 2019) ..................................................................................................24

*State ex rel. Udall v. Colonial Penn Ins. Co.,*
 112 N.M. 123, 812 P.2d 777 (N.M. 1991) .........................................................17

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.,*
 964 F. Supp. 783 (S.D.N.Y. 1997) .....................................................................17

*Strougo v. Bassini,*
 282 F.3d 162 (2d Cir. 2002) ...............................................................................17

*Taylor v. Charter Med. Corp.,*
 162 F.3d 82 (5th Cir. 1998) ................................................................................11

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.,*
 Civil Action No. 3:03-CV-2490-N, 2004 U.S. Dist. LEXIS 27582
 (N.D. Tex. 2004) ............................................................................................23, 23

*Transamerica Mortg. Advisors (tama) v. Lewis,*
 444 U.S. 11 (1979) ........................................................................................19, 35

*Travelers Ins. Co. v. St. Jude Hosp.,*
 37 F.3d 193 (5th Cir. 1994) .............................................................................6, 10

*United States v. Beggerly,*
 524 U.S. 38 (1998) ..............................................................................................12

*United States v. Bruno,*
 809 F.2d 1097 (5th Cir. 1987) ............................................................................28

*United States SEC v. Markusen,*
 143 F. Supp. 3d 877 (D. Minn. 2015) .................................................................19

*United States v. Westbo,*
  746 F.2d 1022 (5th Cir. 1984) ............................................................28

*Victaulic Co. v. Tieman*,
  499 F.3d 227 (3d Cir. 2007) ..............................................................11

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,*
  90 F.3d 118 (5th Cir. 1996) ...............................................................25

*Youmans v. Simon,*
  791 F.2d 341 (5th Cir. 1986) .............................................................30

## Rules & Statutes

15 U.S.C. § 80b-6 ................................................................... *passim*

15 U.S.C. § 80b-6(4) .............................................................. *passim*

15 U.S.C. § 80b-8(d) .............................................................. *passim*

18 U.S.C.S. § 1961(4) ..............................................................26

18 U.S.C.S. § 1961(5) ..............................................................28

18 U.S.C.S. § 1961(1)(B) .......................................................28, 30

18 U.S.C.S. § 1961(1)(D) ..........................................................30

28 U.S.C. § 157(d) ....................................................................9

Fed. R. Bankr. P. 2002(a)(3) .....................................................10

Fed. R. Bankr. P. 9019 ..............................................................4

Fed. R. Civ. P.  9(b) ................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) .............................................................13

Fed. R. Civ. P. 12(b)(3) .............................................................13

Fed. R. Civ. P. 12(b)(6) ........................................................... *passim*

Fed. R. Civ. P. 12(c) .................................................................13

Fed. R. Civ. P. 12(g)(2) .............................................................13

Fed. R. Civ. P. 12(h)(2) ........................................................................................13

Fed. R. Civ. P. 15(a) ............................................................................................34

Fed. R. Civ.. P. 60(d) ...........................................................................................12

LRCiv 7.1(i)(4) .....................................................................................................11

LRCiv 7.2(e) .........................................................................................................11

Tex. Civ. P. Rem. Code § 16.004 .........................................................................11

**Other**

17 C.F.R. § 275.206(4)-8 ......................................................................................19

Advisers Act of 1940 ...................................................................................... *passim*

Securities and Exchange Interpretative Release, *Commission
Interpretation Regarding Standard of Conduct for Investment
Advisers*, 84 FR 33681 SEC Release No. IA-5248; File No. S7-07-18
17 CFR Part 276, June 5, 2019 ......................................................................12, 17

Uniform Requirements for the Investment Adviser *Brochure* and *Brochure
Supplement,* General Instruction 3 to Part 2 of Form ADV....................................12

# I.

## **INTRODUCTION**

Defendant's Motion asking this Court to dismiss Plaintiffs' detailed, 26 page Complaint is not based on that pleading but on over 500 pages of material submitted in an appendix that does not comply with the Local Rules. The Motion asks this Court to bar Plaintiffs' claims under the doctrine of res judicata, not because Plaintiffs have obtained judgments on their claims in previous litigation but because they are forced to participate in Defendant's sprawling bankruptcy proceedings. The Motion invokes the doctrine of judicial estoppel, not because Plaintiffs have convinced a prior court to rule in their favor but because one of them submitted and then *withdrew* an objection that was therefore not considered by the prior court, and for that obvious reason had no bearing on its decision. The Motion asks this Court to ignore federal law imposing fiduciary duties, not because they do not apply, but because it is an inconvenient truth that they cannot shake. The Motion asks this Court to dismiss Plaintiffs claims as implausible, not because they are foreclosed by any contract or admission of Plaintiffs', but because Defendant and its agents have contradicted Plaintiffs' factual allegations in some of the voluminous documents in Defendant's appendix, for which it improperly seeks judicial notice.

Plaintiffs respectfully submit the Motion is without merit.

This action arose when Plaintiffs learned—after the fact—that Defendant had failed to disclose to them the true value of securities sold in connection with a settlement that was approved in Defendant's bankruptcy proceedings. But that settlement—and the facts underlying it--does not form the basis of Plaintiffs' claims or constitute the occurrence or transaction at issue here. The case arises from Defendant's role as an Investment Adviser to the Plaintiffs under the Investment Advisers Act of 1940 (the "Advisers Act"). It seeks damages and other remedies for Defendant's

mismanagement of a securities transaction (including its omission the true value of assets transferred in connection with the HarbourVest Settlement and the benefit Highland would gain). Defendant's actions thus violated fiduciary duties arising as a matter of federal securities law under the Advisers Act.

The bankruptcy court's approval of the HarbourVest Settlement in no way undermines Plaintiffs' claims that Defendant breached fiduciary duties by failing to make appropriate disclosures and through self-dealing (Count I), that Defendant breached contractual obligations by doing the same (Count II), that Defendant acted negligently in failing to make accurate, appropriate disclosures (Count III), or that Defendant is liable under the civil RICO statute, for which violations of the Advisers Act serve as a predicate act.

## II.

## FACTUAL BACKGROUND

Plaintiff Charitable DAF Fund, L.P. ("DAF") is a charitable fund that helps several causes throughout the country, including providing millions of dollars every year to local charities in Dallas and around the country, such as family shelters, education initiatives, veteran's welfare associations, public works (such as museums, parks and zoos), and education (such as specialty schools in underserved communities). Original Complaint ("Compl.") at ¶ 10.

Since 2012, DAF was advised by its registered investment adviser, Defendant Highland Capital Management, L.P. ("Highland"), and its various subsidiaries about where to invest. Compl. at ¶ 11). This relationship was governed by an investment advisory agreement. (Compl. at ¶ 12). As the DAF's investment advisor, Highland owed the DAF fiduciary obligations, including the duty to put the DAF's best interest ahead of its own. (Compl. at ¶¶ 56–57, 62).

_____

In 2017, Highland advised the DAF to acquire 143,454,001 shares of Highland CLO Funding, Ltd ("HCLOF"), which the DAF did via a holding entity, Plaintiff CLO Holdco, Ltd. ("CLO Holdco"). (Compl. at ¶ 12).

Shortly thereafter, CLO Holdco entered into a Subscription and Transfer Agreement whereby a series of related entities collectively referred to as "HarbourVest" acquired a 49.98% membership interest in HCLOF (the "HarbourVest Interests"). (Compl. at ¶¶ 13–14). As part of this transaction DAF retained a 49.02% membership interest, (Compl. at ¶ 13). and Highland took a 0.6% membership interest HCLOF (Compl. at ¶ 25).

HCLOF's portfolio manager is Highland Highland Advisor, Ltd. ("HCFA"), which is subsidiary of Highland and is controlled and operated by Highland. (Compl. at ¶ 24). As such, both Highland and HCFA owed fiduciary duties to CLO Holdco as an investor in the HCLOF fund. James P. Seery, Jr., CEO of Highland, testified that Highland owed such fiduciary duties under the Advisers Act to investors in the funds that Highland manages (App_0008-10, 0014).

The HCLOF parties' rights and obligations as members of HCLOF were governed by the *Members Agreement Relating to the Company* dated November 15, 2017 ("Company Agreement"). (Compl. at ¶¶ 93–94) (App_0018-35). Under the Company Agreement, no member was allowed to sell shares to another member without first providing all other members the right to purchase a pro rata portion thereof at the same price. (Compl. at ¶ 95; App_0026-27).

In October 2019, Highland filed for Chapter 11 (Compl. at ¶ 15). As part of this bankruptcy, HarbourVest filed proof of claims against Highland totaling over $300 million, notionally (Compl. at ¶¶ 16, 21-23). Highland denied the validity of these claims. (Compl. at ¶ 17, 26).

In the meantime, Highland continued to control HCLOF through its subsidiary HCFA. (Compl. at ¶¶ 115–124). In September 2020, HCLOF was underperforming, and the value of the

investment had diminished—the HarbourVest Interests had diminished $52 million in value. (Compl. at ¶ 27). In September 30, 2020, Highland utilized interstate wires to transmit information to the HCLOF investors regarding the value of their respective interests. (Compl. at ¶ 121).

In the following months, however, the value HCLOF began to improve; by the end of November 2020, the value of HCLOF's total assets increased to $72,969,492 ($36,484,746 allocated to HarbourVest) and by the end of December, HCLOF's net asset value reached $86,440,024 (with $43,202,724 allocated to HarbourVest's Interests). (Compl. at ¶¶ 123–124). However, Highland did not transmit these valuations to Plaintiffs (Compl. at ¶ 120).

Around November 2020, Highland and HarbourVest—utilizing the interstate wires— entered into discussions about settling HarbourVest's claims in the bankruptcy. (Compl. at ¶ 119). Highland and HarbourVest reached a settlement, which Highland requested the bankruptcy court to approve on December 23, 2020. (Compl. at ¶ 29; App_0046-64). As part of the settlement, Highland agreed to allow HarbourVest $45 million in unsecured claims, which were expected to yield about to cents on the dollar to HarbourVest (roughly $31,500,000). (Compl. at ¶ 32; App_46-64). As part of the consideration for the $45 million in allowed claims, HarbourVest agreed to sell its interest in HCLOF to Highland (Compl. at ¶ 33) (the "HarbourVest Settlement").

Despite Highland's fiduciary obligations to Plaintiffs, Highland concealed the rising value of HCLOF and the Harbourview Interests, as well as the value that it was buying the interest for. It diverted the entire opportunity to participate in this windfall transaction to itself in violation of its fiduciary duties (Compl. at ¶ 67).

At the January 14, 2021, Bankruptcy Rule 9019 hearing to approve the settlement, HCF's CEO testified that the value allocated to the HarbourVest Interests was $22.5 million, despite that this interest was actually valued at $41,750,000 just two weeks before. (Compl. at ¶¶ 34, 37). In

_____

Plaintiffs' Response to Motion to Dismiss Complaint                                    Page 4

other words, Highland obtained a windfall. The bankruptcy court issued an order approving the HarbourVest Settlement (App_0065-68) (the "<u>9019 Order</u>"). The sale of the HarbourVest Interests transformed Highland from a minority member with a 0.6% interest into the controlling member with a 50.49% interest.

**III.**

**<u>LEGAL STANDARD</u>**

Motions to dismiss for failure to state a claim are viewed with disfavor and are seldom granted. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to the relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Rule 8 does not demand "'detailed factual allegations[.]'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In ruling upon a Rule 12(b)(6) motion, the Court cannot decide disputed fact issues. The court may grant a motion under Rule 12(b)(6) *only if* it can determine with certainty that *the plaintiff cannot prove facts that would allow the relief sought* in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (emphasis added). In its consideration, a court must draw all reasonable inferences in favor of the plaintiff. *See Collins*, 224 F.3d at 498.

**IV.**

**<u>THE PRECLUSION DOCTRINES DO NOT APPLY</u>**

A. <u>HIGHLAND'S RES JUDICATA DEFENSES FAIL</u>

Highland's preclusion defenses fail. As the proponent of the affirmative defense, Highland must establish all elements of those defenses as a matter of law. *See Memphis-Shelby Cty. Airport*

*Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1289 (5th Cir. 1986).

"The doctrine of res judicata, or claim preclusion, forecloses relitigation of claims that were or

could have been raised in a prior action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-

13 (citation omitted). "In this circuit, an action is barred by the doctrine of res judicata only if: (1)

the parties are identical in both actions; (2) the prior judgment was rendered by a court of

competent jurisdiction; (3) the prior judgment was final on the merits; and (4) the cases involve

the same cause of action." *Travelers Ins. Co. v. St. Jude Hosp.*, 37 F.3d 193, 195 (5th Cir. 1994).

Importantly, the Original Complaint does not seek to reverse or unwind the HarbourVest

Settlement. Nothing in the Original Complaint seeks to put the parties to that settlement in the

same position they were prior to January 14, 2021. Suing a party to a transaction for harm caused

in the course of conducting that transaction is not the same thing as suing to rescind the transaction.

This false equivalency is what Highland's entire argument is based upon.

## 1. *Res Judicata* Does Not Apply Because the Court's 9019 Order Does Not Specifically Release Plaintiffs' Claims or Resolve them on the Merits

The Fifth Circuit previously held that a bankruptcy court's final order confirming a plan of

reorganization did not have *res judicata* effect on third party claims against the debtors' insiders,

when the plan did not specifically identify the claims or conclusively resolve them on the merits.

In *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203

F.3d 914, 919 (5th Cir. 2000), the Fifth Circuit addressed whether general release language in a

bankruptcy  order applied to unenumerated claims. The bankruptcy court's order provided that:

> The provisions of the confirmed plan shall bind all creditors and parties in
> interest, whether or not they accept the plan and shall discharge the Debtor, its
> officers, shareholders and directors from all claims that arose prior to
> Confirmation.

*Id.* at 919.

---

Admitting that this language would have released the personal guarantees of certain officers, shareholders and directors—the "Spiveys'—the Fifth Circuit nonetheless refused to apply *res judicata* to preclude the plaintiff's suit on those guarantees. The court explained that the merits of those guarantees had not been litigated, and importantly, "[n]o specific discharge or release of the Spiveys' individual guarantees to [a creditor] was enumerated or approved by the bankruptcy court in this matter." *Id*. This was enough to prevent the application of *res judicata*.

Here, the 9019 Order does not even seek to resolve the entire Highland bankruptcy, as did the plan confirmation order in *Applewood*. Rather, it merely approves a settlement agreement—a privately negotiated contract—between Highland and HarbourVest. There is no dispute that the 9019 Order is a final order as to Highland and HarbourVest's settlement—but nothing suggests that it bestows immunity on Highland (or anyone else) for *any and all* violations committed in the process of obtaining that settlement. Neither of the Plaintiffs here were parties to the litigation between HarbourVest and Highland, nor were they parties to the settlement agreement itself.

Similarly, the 9019 Order does not purport to resolve Plaintiffs' claims on the merits, nor does it specifically purport to release Plaintiffs' claims that are raised herein. (App_0065-69). The 9019 Order simply overrules objections *en masse* without addressing the merits thereof. (App_67 ("All objections to the Motion are overruled.")). Accordingly, *res judicata* cannot apply because the 9019 Order neither addressed nor disposed of Plaintiffs' causes of action *on the merits*. *Accord Applewood,* 203 F.3d 914, 919; *Risby v. United States*, No. 3:04-CV-1414-H, 2006 U.S. Dist. LEXIS 8798, at *19-21 (N.D. Tex. 2006) (R&R) (denying *res judicata* because "to operate as a *res judicata* bar, a final judgment must address the merits of a claim. …").

Defendant's contention that CLO Holdco's withdrawal of its objection to the settlement is an abandonment of the merits of its causes of action—all of them—arising in any way from

_____

Highland's misconduct is baseless. The withdrawal did not purport to be "with prejudice," and cannot implicitly have been with prejudice as to matters not addressed by the Court on the merits. *See Chalmers v. Gavin*, 2002 U.S. Dist. LEXIS 5636, *3 (N.D. Tex., Apr. 2, 2002) (finding that *res judicata* did not bar action where previous claims were dismissed without prejudice and thus did not operate as an adjudication on the merits); *cf. Reynolds v. Tombone*, 1999 U.S. Dist. LEXIS 9995, at *12 and n.5 (N.D. Tex., June 24, 1999) (finding that *res judicata* did not bar later action where prior motion was not adjudicated on the merits).

Notably, Highland cites no authority for the proposition that a withdrawal of an objection to a settlement in bankruptcy is with prejudice to the substantive legal rights of the objector who might be injured. Nor can Highland do so. The court's role of approving an otherwise privately negotiated settlement is a far cry from its role finder of fact after a trial. The bankruptcy court has *discretion* to overrule an objection;. *See* Fed. R. Bankr. 9019; *In re Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988). The Fifth Circuit has specifically stated that a Rule 9019 approval order does NOT involve a "mini trial". *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 541 (5th Cir. 2015). A bankruptcy court "is to 'canvas the issues' to see if the settlement falls 'below the lowest point in the range of reasonableness.'" *In re Alfonso*, No. 16-51448-RBK, 2019 Bankr. LEXIS 2816, at *8 (Bankr. W.D. Tex. 2019) (citation omitted).

In other words, a bankruptcy court *may* approve a settlement *notwithstanding* the merits or any claim or objection that is raised by a third party, if the court finds that the settlement is nonetheless fair to the *debtor*. *See Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Among the factors that a bankruptcy court is required to consider in determining whether a settlement is in the best interests of the estate—<u>none</u> requires dispensing with the "claims" of any objectors on the merits; at best, the court is only

___

required to consider "the best interests of the creditors, with proper deference to their reasonable views[.]"[1] Here, the bankruptcy court did not state it was doing anything more than that in approving the HarbourVest Settlement—in fact, it specifically recited that line *verbatim* (App_67).

Accordingly, while the 9019 Order is final as to the settled claims themselves. To say that it resolves all causes of action for damages that could have been brought by any third-party objector on the merits is, well, meritless. The bankruptcy court's having the sole *discretion* in approving the HarbourVest Settlement is completely at odds with the premise that it was necessarily resolving anything else *on the merits*. Therefore, the 9019 Order is insufficient to support preclusion.

## 2. **The Bankruptcy Court Was Not a Court of Proper Jurisdiction to Hear the Causes of Action**

While the bankruptcy court could hear Plaintiff CLO Holdco's objection to the HarbourVest Settlement, it lacked the power under 28 U.S.C. § 157(d) to claim jurisdiction over the causes of action. Much ink is being spilled on the bankruptcy court's province to hear the claims raised in this action. Pending before this Court is Highland's *Motion for an Order to Enforce the Order of Reference*, and Plaintiffs' Response and *Cross-Motion to Withdraw the Reference* under § 157(d)'s mandatory withdrawal language. Plaintiffs incorporate here their briefing in the Response and Cross-Motion, and respectfully submit that if this Court decides that

---

[1] "In determining whether a settlement is fair and equitable, we apply the three-part test set out in *Jackson Brewing* with a focus on comparing "the terms of the compromise with the likely rewards of litigation." A bankruptcy court must evaluate: (1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. These "other" factors—the so-called *Foster Mortgage* factors—include: (i) "**the best interests of the creditors, 'with proper deference to their reasonable views'**"; and (ii) "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015) (citations omitted) (bolding added).

mandatory withdrawal applies, then it cannot find that the bankruptcy court's already-entered final judgement was rendered on Plaintiffs' causes of action and had jurisdiction to do so.

### 3.   These Claims Do Not Arise Out of the Same Nucleus of Operative Facts

In order to assess the "same causes of action" element, the Fifth Circuit asks "whether the claims arise out of the same nucleus of operative facts." *Travelers*, 37 F.3d at 195 (citations omitted). Where a different legal duty is implicated in the subsequent action, it is not the same nucleus of operative facts. *Id.* Additionally, where a litigant could not have litigated the claims in the prior litigation, then they do not arise from the same nucleus of operative facts, and res judicata will not apply. *Id.*

Here, the claims raised in the Original Complaint did not ripen until after the HarbourVest Settlement was consummated, which itself was accomplished only *after* the bankruptcy court entered its 9019 Order. *Compare, e.g.,* Compl. ¶¶ 76, 81, 88, 90, 92-99, 113-133, 136-140.

Specifically, the first time Plaintiffs ever heard about the valuation of the HarbourVest Interests in HCLOF was during the January 14, 2021 approval hearing. Compl. ¶ 31, 76. The motion papers and exhibits Highland filed on December 23, 2020, contained no such valuation; they instead lumped in the $80 million in claims allowed by Highland as undifferentiated consideration for both (a) the releases of HarbourVest's causes of action against Highland, and (b) the sale of the HCLOF shares to Highland. *See* Compl. ¶ 29; App_0047. Therefore, it would have been impossible for Plaintiffs to bring these claims in the bankruptcy court prior to January 14, 2021, and so it is impossible that they were, or could have been, decided on the merits at that time. *Risby*, 2006 U.S. Dist. LEXIS 8798, at *19-21.

### 4.   Highland's Litany of Attachments Changes Nothing

Highland attaches a litany of documents in the hopes of convincing this Court that the claims in this lawsuit were already fulsomely litigated.[2] They were not. Although the 9019 Motion barely complied with the twenty-one day notice requirement set forth in Fed. R. Bankr. P. 2002(a)(3), it is preposterous to claim that a motion, filed on December 23, 2020, and heard 22 days later (with Christmas and New Year's in the middle), gave Plaintiffs a reasonable opportunity to litigate their dispute (which had not even ripened yet).

Note that the statute of limitations for Plaintiffs' lead claims is *four* years[3]—but Defendant contends that 22 days is all Plaintiffs had to discover and bring these claims on pain of permanent disposition. This would surely be a violation of Plaintiffs' due process rights. *See Benson & Ford,*

_____

[2] Highland's appendix violates this Court's local rules requiring pagination, Local Rule 7.1(i)(4), and references to specifically paginated appendices, Local Rule 7.2(e). The lack of such reference, and the lack of any specificity in Highland's general request for this Court to take judicial notice of adjudicative facts found in 500 pages of appendices—without specifically explaining why judicial notice can be taken—should cause this Court to reject the invitation. This Court's sister court has held that a court should only take judicial notice of facts "'sparingly at the pleadings stage.'" *Reneker v. Offill*, No. 3:08-cv-1394-D, 2010 U.S. Dist. LEXIS 38526, at *5 (N.D. Tex. Apr. 19. 2010) (Fitzwater, J.) (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007)). "'Only in the clearest cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point.'" *Id.* Courts in the Fifth Circuit have been very careful to note while they may take judicial notice of the fact of certain filings, they cannot take notice of the *facts recounted in them* unless they are undisputed, or facts found by another court. *See Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996) (noting that at 12(b)(6) stage, judicial notice of filed documents "should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998) (noting the general rule that a court cannot take judicial notice of the findings of another court because it would undermine the standards applicable to *res judicata*). To the extent Highland asks this Court to take judicial notice of adjudicative facts, the Court should refuse to do so.

[3] The statute of limitations in Texas for breaches of contract, breach of fiduciary duty, and tortious interference are all four years. Tex. Civ. P. Rem. Code § 16.004. The RICO Statute of limitations is likewise four years. *Petras v. Mole*, Civil Action No. 3:11-CV-1402-N, 2012 U.S. Dist. LEXIS 207745, at *12-13 (N.D. Tex. 2012).

_____

*Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) ("A litigant has a due process right to a full and fair opportunity to litigate an issue.") (internal citations omitted).

In arguing, disingenuously, that Plaintiffs are at fault for trusting Highland's representations, Highland conveniently elides the fact that as a Registered Investment Adviser, the Advisers Act imposed an affirmative duty on *Highland* to—without being asked—truthfully disclose the entire extent of the transaction it was contemplating *before* it consummated it, including the value of the interest it was self-dealing in.[4,5]

## B. HIGHLAND'S REQUEST FOR JUDICIAL ESTOPPEL FAILS

As an affirmative defense, it is Defendant's duty to prove all the elements of judicial estoppel as a matter of law. Here, Highland has failed to do so. "'[T]wo bases for judicial estoppel must be satisfied before a party can be estopped. First, it must be shown that the position of the

---

[4] The SEC explains that: "To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship. Material facts relating to the advisory relationship include the capacity in which the firm is acting with respect to the advice provided." *See* Securities and Exchange Commission Interpretative Release*, Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, 84 FR 33681 SEC Release No. IA-5248; File No. S7-07-18, 17 CFR Part 276, June 5, 2019 ("SEC Interpretation") at p. 6 (internal citations omitted). *See also* General Instruction 3 to Part 2 of Form ADV ("Under federal and state law, you are a fiduciary and must make full disclosure to your clients of all material facts relating to the advisory relationship. As a fiduciary, you also must seek to avoid conflicts of interest with your clients, and, at a minimum, make full disclosure of all material conflicts of interest between you and your clients that could affect the advisory relationship. This obligation requires that you provide the client with sufficiently specific facts so that the client is able to understand the conflicts of interest you have and the business practices in which you engage, and can give informed consent to such conflicts or practices or reject them.").

[5] Even if Highland is correct that the HarbourVest Settlement is somehow a final order on the claims Plaintiffs' raised in the Original Complaint, the Original Complaint (as the later filing) should be construed as one seeking equitable relief from the 9019 Order under Rule 60(d). Rule 60 authorizes equitable relief from a final judgment, order, or proceeding, and subsection (d) specifically authorizes "an *independent* action to relieve a party from a judgment, order or proceeding[.]" FED. R. CIV. P. 60(d). This mechanism provides an exception to *res judicata*. *See United States v. Beggerly*, 524 U.S. 38, 46 (1998).

---

party to be estopped is clearly inconsistent with its previous one; and second, that party must have **convinced** the court to accept that previous position.'" *Harrison Co. LLC v. A-Z Wholesalers, Inc.*, No. 3:19-CV-1057-B, 2021 U.S. Dist. LEXIS 44534, at \*18 (N.D. Tex. 2021) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)) (emphasis added).

The Defendant has not met its burden as to either prong of judicial estoppel. There has been no decision on the merits in favor of the DAF or Holdco on their claims in bankruptcy court. Withdrawing an objection and then raising the argument later is not the same thing as "taking an inconsistent position" under any guise of law or common sense. Plaintiffs were clearly not "successful" on the objection before.

## V.

## <u>PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF</u>

### A.  <u>THE MOTION FAILS UNDER RULE 12(G) AND IS PREMATURE</u>

Rule 12(g) only permits one motion under Rule 12 to be filed –and that any defense not raised in the first motion is waived, except as provided in Rule 12(h)(2). *See* FED. R. CIV. P. 12(g)(2) Rule 12(h)(2) states that while the defense of failure to state a claim is not waived by failure to bring it in the first-filed Rule 12 motion, it may be only brought via a later motion under Rule 12(c). Here, Highland's first-filed motion, *Motion for an Order to Enforce the Order of Reference* is functionally a motion under Rule 12(b)(1) or 12(b)(3). Accordingly, Defendant is limited to bringing its failure to state a claim motion via a motion under Rule 12(c) after the pleadings are closed. Furthermore, the fact that Highland has shown that there are issues of fact— such as the scope of duties it owes and to whom under federal law—its motions are more appropriately reserved for summary judgment, after the close of discovery.

### B.  <u>PLAINTIFFS HAVE PLED CLAIMS FOR BREACH OF FIDUCIARY DUTY</u>

_____

In Texas, the elements of a breach of fiduciary duty are: '(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant.'" *Cudd Pressure Control, Inc. v. Roles*, 328 F. App'x 961, 964 (5th Cir. 2009) (quoting *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007)).

1. **The Complaint Pleads that Highland and HCFA Owe Fiduciary Duties Under the Advisers Act and Other Bases**

        *a. The Fiduciary Duty of Highland and HCFA to CLO Holdco*

The Original Complaint specifically states that a fiduciary duty is owed by Highland and HCFA to Holdco via the Advisers Act and via corporate governance law.

*First*, HCFA is a wholly-owned subsidiary of Highland, and both are registered investment advisers under the Advisers Act of 1940. (Compl. ¶ 56). Highland operates HCFA, which serves as the Portfolio Manager of Highland CLO Funding, Ltd. ("HCLOF"). Highland and HCFA owed a fiduciary duty to Holdco as an investor in HCLOF. (Compl. ¶ 61).

*Second*, as the control person of HCLOF, Highland via HCFA owed fiduciary duties to Holdco, and so Holdco's fiduciary duty claims are additionally derivative in nature under the minority oppression doctrine.[6] Highland has not challenged this basis for a fiduciary duty claim.

        *b. The Fiduciary Duty of Highland Directly to the DAF*

The Original Complaint pleads that Highland and the DAF are in a direct advisory relationship by virtue of a contractual arrangement. (Compl. ¶ 58).[7] In addition to being the RIA

---

[6] Guernsey law recognizes both derivative and double-derivative actions, especially where the company is controlled by the alleged wrong-doer, as HCLOF is here. *See cf. Jackson v. Dear and Seven Others*, [2013 GLR 167] Guernsey Royal Ct. (Talbot, Lieut, Bailiff).

[7] Although the Complaint pleads that the operative agreement is the Amended and Restated Investment Advisory Agreement, we have since learned that there is a Second Amended and

---

to the DAF, Highland was appointed the DAF's attorney-in-fact for certain actions, such as "to purchase or otherwise trade in Financial Instruments that have been approved by the General Partner." RIA Agreement ¶ 4. (Compl. ¶ 59).  The RIA Agreement further commits Highland to value financial assets "in accordance with the then current valuation policy of the Investment Advisor [Highland], a copy of which will provided to the General Partner upon request." (Compl. ¶ 60). And while Highland contracted for the recognition that it would be acting on behalf of others and could be in conflict with advice given the DAF, (RIA Agreement ¶ 12), nowhere did it purport to waive the fiduciary duties owed to the DAF not to trade as a principal in a manner that harmed the DAF. (Compl. ¶ 61).

"Since 2012, DAF was advised by its registered investment adviser, Highland Capital Management, L.P., and its various subsidiaries, about where to invest. This relationship was governed by an Investment advisory Agreement." (Compl. at ¶ 11). As DAF's registered investment advisor, Highland is DAF's fiduciary. *See Douglass v. Beakley,*, 900 F. Supp. 2d 736, at 751-52, n.16.

Additionally, Highland was appointed the DAF's attorney-in-fact. (Compl. at ¶ 59). "As the appointment of an attorney-in-fact creates a fiduciary relationship as a matter of law, Texas law imposes special duties on persons acting in that capacity." *Pool v. Johnson*, Civil Action No. 3:01-CV-1168-L, 2002 U.S. Dist. LEXIS 6613, at *17 (N.D. Tex. 2002) (citing *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.—Texarkana 1994, writ denied)). Under Texas law, "[a] fiduciary owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability." *Id*. (citing *Sassen*, 877 S.W.2d at 492).

---

Restated Advisory Agreement, and our proposed amendment, among other things, corrects this error.

2. __The Fiduciary Duties Imposed by the Advisers Act Are Actionable Under Texas Law and are Owed to Investors Like CLO Holdco__

"Whether a fiduciary duty exists is a question of law for the court. The facts giving rise to a fiduciary duty, however, are to be determined by the fact finder." *Lampkin v. UBS Painewebber, Inc. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*, 238 F. Supp.3d 799, 852 (S.D. Tex. 2017) (*citing Fuqua v. Taylor*, 683 S.W. 2d 735, 737 (Tex. App.—Dallas 1984, *writ ref'd n.r.e.*)).

a. ***The Advisers Act's Imposition of a Fiduciary Duty is Actionable Under Texas Fiduciary Duty Law***

Under Texas law, an investment advisor /advisee client relationship is considered a formal fiduciary relationship because it is a principal and agent relationship. *Accord Lampkin v. UBS Painewebber, Inc. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 238 F. Supp. 3d 799, 851 (S.D. Tex. 2017). Texas law provides that a fiduciary relationship is governed by the terms of the agency. *See Hand v. Dean Witter Reynolds, Inc.*, 889 S.W. 2d 483, 492 (Tex. App.—Houston [14th Dist.] 1994, *writ denied*). The Advisers Act provides the scope of, and rules governing, the adviser/advisee agency relationship. *Laird v. Integrated Res.*, 897 F.2d 826, 834 (5th Cir. 1990).

Recognizing that fact, this very Court decided almost a decade ago that, although the Advisers Act does not itself create a cause of action, it is still actionable through state law fiduciary duty claims. *See Douglass v. Beakley*, 900 F. Supp. 2d 736, 751-52, n.16 (N.D. Tex. 2012) (Boyle, J.) (denying motion to dismiss state fiduciary duty claims predicated on breaches of the Advisers Act, noting in footnote that the Advisers Act provided the bases for a formal fiduciary relationship and thus plaintiffs' *state* breach of fiduciary duty claims could be predicated on breach of the

---

Advisers Act).[8] No decision we could find has held that a Texas fiduciary duty claim cannot seek redress for breaches of the fiduciary obligations imposed under the Advisers Act.

### b. *The Advisers Act's Fiduciary Duty Extends to Investors like Holdco*

"As a fiduciary, the standard of care to which an investment adviser must adhere imposes 'an affirmative duty of 'utmost good faith, and full and fair disclosure to all material facts,' as well as an affirmative obligation to 'employ reasonable care to avoid misleading' his clients.'" *Laird v. Integrated Res.*, 897 F.2d 826, 834 (5th Cir. 1990) (quoting *S.E.C. v. Blavin*, 760 F.2d 706, 711-12 (6th Cir. 1985) (citing *Capital Gains*, 375 U.S. at 194 (citations omitted)).

As explained by the SEC in its Rule making and interpretative Guidance: "under its duty of loyalty, an investment adviser must eliminate or make full and fair disclosure of all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." Securities and Exchange Commission Interpretative Release, *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, 84 FR 33681 SEC Release No. IA-5248; File No. S7-07-18, 17 CFR Part 276, June 5, 2019 ("SEC Release") at p. 8 (internal citations omitted). The SEC is empowered under the Advisers Act to give interpretive guidance, which is

---

[8] Other courts are in accord. *See Goldenson v. Steffens*, No. 2:10-cv-00440-JAW, 2014 U.S. Dist. LEXIS 201258, at *137 (D. Me. 2014) ("Even assuming the [Advisers Act] provides no private right of action, this does not mean that it does not create a standard of care from which a duty arises…."); *State ex rel. Udall v. Colonial Penn Ins. Co*., 112 N.M. 123, 812 P.2d 777, 785 (N.M. 1991) (citing *Capital Gains Research*, and applying the standard set forth therein, in ruling on a state law claim for breach of fiduciary duty against an investment adviser). *Cf. Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502-06 (3d Cir. 2013) (holding that state fiduciary duty claims are a recognized vehicle for enforcing violations of the Advisers Act, but granting summary judgment on the basis that plaintiffs had not properly proved an advisory relationship or a conflict of interest); *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F.Supp. 783, 799 (S.D.N.Y. 1997) (holding that state fiduciary duty claims could be predicated on duties supplied under the Investment Company Act of 1940), *rev'd in part on other grounds in Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002).

---

accorded *Chevron* deference. *See SEC v. Zandford*, 535 U.S. 813 (2002) (SEC interpretations and rule making entitled to *Chevron* deference). "In order for disclosure to be full and fair, it should be sufficiently specific so that a client is able to understand the material fact or conflict of interest and make an informed decision whether to provide consent." *Id.* at 24.

Further, an investment advisor's "duty of loyalty requires that an advisor not subordinate its clients' interests to its own. In other words, an investment adviser must not place its own interest ahead of its client's interests." *Id*. at 21. In sum, an investment advisor has a "duty to act in the **client's** best interest[,]" not its own. "Under the "best interest" test, an adviser may benefit from a transaction recommended to a client if, *and only if*, that benefit and all related details of the transaction are fully disclosed." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 503 (3d Cir. 2013). While not disagreeing with the scope and terms of the fiduciary duty, Highland contends that neither it, nor HCFA, owed a fiduciary duty to CLO Holdco, which was an investor in HCLOF. This is false for a couple of reasons:

<u>***First***</u>, Highland's CEO, James Seery, in discussing the necessity of his appointment as CEO and the degree to which he understood the importance of his job, he testified under oath— under *direct examination*—that he and Highland, as registered investment advisers—owed fiduciary duties to the funds they managed, and the investors in those funds. (App_0009) ("The goals of the debtor…number one, discharge Highand's, … duties to investors in the funds. Those are fiduciary duties under the Investment Advisers Act."); (App_14) ("the Investment Advisors Act puts a fiduciary duty on Highland Capital to discharge its duty to the investors. So while we have duties to the estate, we also duties, as I mentioned in my last testimony, to each of the investors in the funds."). Seery's sworn, uncontradicted testimony, is an undisputed fact that this

---

Court may take judicial notice of at this stage. *See* Fed. R. Evid. 201(b); *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (per curiam)).

**_Second_**, the Supreme Court has stated that the Advisor's Act's provisions in 15 U.S.C. § 80b-6, are fiduciary duties. *See Transamerica Mortg. Advisors (tama) v. Lewis*, 444 U.S. 11, 17, 100 S. Ct. 242, 246 (1979) ("As we have previously recognized, § 206 [15 U.S.C. § 80b-6] establishes 'federal fiduciary standards' to govern the conduct of investment advisers."). Subsection (d) of that statute delegates to the SEC the power to enact standards for its enforcement. To wit, the SEC enacted 17 C.F.R. § 275.206)(4)-8, to enforce the fiduciary standards in Section 206(d) of the Advisers Act:

> (1) Make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, **to any investor** or prospective investor in the pooled investment vehicle; or

> (2) Otherwise engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative **with respect to any investor** or prospective investor in the pooled investment vehicle.

17 C.F.R. § 275.206)(4)-8 (bold added).[9] Therefore, as a matter of statute, Highland owes duties to investors like Holdco.

**_Third_**, Highland's entire premise—that it owes no duties to Holdco as an investor in HCLOF—is based upon the notion that Holdco is not a "client" under the Act because Highland and Holdco have no Advisory Agreement between them. But the Investor's Act does not state, anywhere, that an RIA has *no* duties to an investor just because they are not a client under an

---

[9] Although Highland does not contest that HCLOF is a "pooled investment vehicle" for the purposes of this regulation, the HCLOF does qualify because, according to the Company Agreement, it "[has] less than 100 investors and do[es] not publicly offer [its] securities." *United States SEC v. Markusen*, 143 F. Supp. 3d 877, 891 (D. Minn. 2015).

advisory agreement. Accordingly, Highland's contention that it owes no fiduciary duties directly to investors like Holdco fails on its face, and is contradicted by the law and the facts.

### 3. **Plaintiffs Have Alleged Several Breaches of Fiduciary Duty**

Highland breached multiple fiduciary obligations in the process of negotiating and consummating the HarbourVest Settlement. The materiality of misrepresenting the value and the benefit to Highland of the investment is not debatable. *Accord S.E.C. v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985). And Highland cannot escape liability for this duty by conducting its advisory activities through HCFA. *See* 15 U.S.C. § 80b-8(d) ("It shall be unlawful for any person indirectly, or through or by any other person, to do any act or thing which it would be unlawful for such person to do directly under the provisions of this title [15 USCS § 80b-1 *et seq*.] or any rule or regulation thereunder.").

The core fiduciary duty that was breached is the duty against self-dealing, which is a core conflict of interest. The Advisers Act's primary purpose is to eliminate advisers' conflicts of interest. *See Laird,* 897 F.2d at 839 (purpose of § 80b-6 of Advisers Act was to eliminate conflicts of interests between advisers and their advisees). The Advisers Act also makes clear that the duty of loyalty means putting CLO Holdco's interest first.[10] Under this duty, the Advisers Act explains that an adviser must have a rational, non-self-interested basis for how it allocates investment opportunities that are appropriate for its advisees.[11] Here, the HCLOF Company Agreement makes

---

[10] *See* SEC Release at 23.

[11] SEC Release at 27 ("When allocating investment opportunities among eligible clients, an adviser may face conflicts of interest either between its own interests and those of a client … When allocating investment opportunities, an adviser is permitted to consider the nature and objectives of the client and the scope of the relationship. An adviser need not have pro rata allocation policies, or any particular method of allocation, but, **as with other conflicts and material facts, the adviser's allocation practices must not prevent it from providing advice that is in the best interest of its clients.**"); *see also* SEC Release at 21 and n.54 (noting that SEC deems it breach of

it clear that the purposes of HCLOF's investors is to acquire profitable CLO and CLO related securities—which the shares in HCLOF would fall under (App_0020).[12]

Highland entered into settlement negotiations in November 2020 with HarbourVest where it first learned of HarbourVest's intent to sell its interests in HCLOF. (Compl. ¶ 119). On December 23, 2020, Highland moved for approval of the HarborVest Settlement. On January 14, 2021, at the Bankruptcy Court for the Northern District of Texas, Highland's CEO declared the that the value of HarbourVest's Interest in HCLOF was $22.5 million. (Compl. at ¶ 34). As Defendant concedes, Counsel for Plaintiff CLO Holding, who also represented DAF, attended that hearing. (Doc. No. 27 at ¶ 10). The Bankruptcy Court approved a settlement that permitted Highland to obtain HCLOF's interest for this amount. (Compl. at ¶¶ 32-34). In truth, the HarbourVest Interests were worth in excess of $41,750,000 at that time. (Compl. at ¶ 37). Highland, however, did not disclose the true value of HarbourVest's interests to Plaintiffs—*ever*. (Compl. at ¶ 75). Highland's failure to disclose the true value of the HarbourVest Interests was a breach of its duty of full and fair disclosure, regardless of its intent.

Furthermore, the value of the trade, the potential upside in the trade, and the nature of the trade were never disclosed to Holdco or the DAF prior to the hearing—indeed, the value and nature was misrepresented to them at the hearing. (Compl. ¶ 76, ¶ 120). Highland converted its 0.6% interest into a 50.58% interest and thereby control of HCLOF. Therefore, Highland and HCFM, by allocating 100% of the investment opportunity in the HarbourVest Interests to itself (then, a

_____

the duties of Section 206 of Advisers Act for an adviser to allocate the trades to its own account at the expense of advisees).

[12] The Company Agreement states that HCLOG "has been established to provide its investors with exposure to CLO Notes on both a direct basis and indirect basis and senior secured loans on an indirect basis, through the use of the investments described in its investment policy [in the Offering Memo]."

_____

mere 0.6% holder of HCLOF (Compl. at ¶ 25), and doing so without the informed consent of both HCLOF or CLO Holdco, violated its duty of loyalty to both. The same goes to its duties to the DAF under the Advisory Agreement.

To the extent Highland contends that the Company Agreement or any other provision waives its obligations under the Advisers Act, or those of HCFA, those waivers are null and void under 15 U.S.C. § 80b-15(a).[13]

### 4. Rule 9(b) Does Not Apply—But Even if it Did, it has Been Met

"By its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty, or non-fraudulent misstatement. *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, Civil Action No. 3:03-CV-2490-N, 2004 U.S. Dist. LEXIS 27582, at *7 (N.D. Tex. 2004). Here, Plaintiffs' fiduciary duty claims do not turn on fraudulent intent. The Advisers Act forbids investment advisors from "engag[ing] in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6(4).

The violations of § 80b-6 of the Advisor's Act, although called the "antifraud" provisions, do not require a pleading of scienter. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195, 84 S. Ct. 275, 284-85 (1963) ("… Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit' upon a client, did not intend to require proof of intent to injure and actual injury to the client."). To wit, Plaintiffs also allege that Highland breached its fiduciary duty by self-dealing when it purchased the entire HarbourVest Interests without providing Plaintiffs with the opportunity to participate. (Compl. at ¶ 76–88). These allegation do

---

[13] Even if this court dismisses the Company Agreement claim (Count II), that would not operate to deprive CLO Holdco or the DAF of the right to have Highland put their interests first as a matter of Advisers Act fiduciary duty. The Company Agreement and Advisory Agreement cannot waive those fiduciary obligations.

not require a false statement, nor require Plaintiffs' reliance, nor damage to Plaintiffs (a benefit to Highland suffices) all of which are elements of fraud. Because fraudulent conduct does not underlie Plaintiffs allegations, Rule 9(b) does not apply. *Tigue Inv. Co.*, Civil Action No. 3:03-CV-2490-N, 2004 U.S. Dist. LEXIS 27582, at *7–8.

Nonetheless, the Complaint satisfies Rule 9(b). The Complaint systematically goes through and identifies the dates, acts, communications, omissions and consequences of the breaches of fiduciary duties under the Advisers Act and under state law. *See, e.g.,* Compl. ¶ § 55-91, 119-125, 127-129. Defendant's blythe throw-away statement that Rule 9(b) has not been met is simply unsupportable.

## C. PLAINTIFF CLO HOLDCO HAS PLED A CLAIM FOR BREACH OF CONTRACT AND TORTIOUS INTERFERENCE

Plaintiff CLO Holdco's breach of contract claim is straightforward. Under the HCLOF Company Agreement, a "Transfer" of the shares of HCLOF is defined to include the "sale" of the shares. Members Agreement, § 6.1 (App_0026).

Sections 6.1 and 6.2 of the Agreement purport to allow sales by members of their interests in HCLOF to "affiliates" of Members, but not to members themselves, without certain conditions precedent. App_0026-27). One of those conditions precedent is that the other members have to be afforded the right to purchase their pro-rata portion (App_0027).

Highland contends that the "transfer" to its "nominee," HCMLP Investments, LLC, is a transfer to an "affiliate," which is consistent with the Company Agreement. But this is factual gerrymandering and outside the scope of a 12(b)(6). The Transfer that is the basis of Plaintiffs' contract claim is the sale by HarbourVest. That sale was accomplished through the Settlement Agreement with Highland (App_0046-54). In the Settlement Agreement, Highland paid for the Harbourvest Interests. In return, HarbourVest agreed to release its claims against Highland and

transfer the HarbourVest Interests *to Highland*. (App_0047). Highland's supposed "nominee," HCMLP Investments, LLC was not a party to this agreement. Highland's nominee did not pay for those interests. *Id*. Therefore, the Settlement Agreement constitutes a sale to *Highland*. And to the extent it was a sale to Highland, the sale violated Section 6.2 of the Company Agreement.

Defendant argues that because the shares were titled in the name of Highland's nominee, HCMLP Investments, LLC, it is an affiliate of Highland, and therefore there was no breach of contract. But this argument ignores the fact that even though the shares were ultimately titled in the name of an affiliate, the HCLOF shares were *sold* by HarbourVest to *Highland*. The addendum transfer where Highland delegated its right to receive the shares to a nominee is "form over substance" and is bad faith, in violation of the Company Agreement § 20.5's "good faith" clause.

Defendant argues that Plaintiff failed to plead actual damages. But Defendant ignores that fact that Plaintiff pleads that the breach of contract denied it the opportunity to obtain a share of the HabourVest Interests at a $20+ million discount, which it alleges are damages. (Compl. at ¶¶ 98–100, 102). Lost profits are an available remedy for breach of contract. *Basic Capital Mgmt. v. Dynex Commer., Inc.*, 402 S.W.3d 257, 268 (Tex. App.—Dallas 2013). "Recovery for loss profits does not require that the loss be susceptible of exact calculation." *Id.* (quoting *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)).

Highland claims that Plaintiff's damages are too speculative. The case it cites, *Snowden v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1797, 2019 U.S. Dist. LEXIS 23557, at *13–14 (N.D. Tex. 2019), which is completely inapposite on the facts because there no one had actually lost their use and enjoyment of the home. However, Plaintiff does plead that it would have paid for the interest with cash. (Compl. ¶ 49-50). Highland's choice to disbelieve this allegation is not relevant here.

_____

Because Highland's entire premise for dismissing Plaintiffs' tortious interference claim is predicated on the non-existence of an enforceable contract, Plaintiff's tortious interference claim likewise survives.

### D.  PLAINTIFFS HAVE PLED A CLAIM FOR NEGLIGENCE

Highland's entire argument for dismissal of the negligence cause of action is incorporating its other arguments. But this is a waiver because it has not articulated any basis for dismissal, and has not shown which elements have not been met. First, under long-established Texas law, the elements of a negligence claim are: (a) a legal duty owed by one person to another; (b) breach of that duty; and (c) damages proximately caused by the breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Here, the Motion should be denied because the elements have all been pled. *See* Compl. ¶ 103-112.

### E.  PLAINTIFFS HAVE PLED A CAUSE OF ACTION UNDER RICO

Highland seeks to dismiss Plaintiffs' Racketeer Influenced and Corrupt Organizations (15 U.S.C. § 1961 et seq.) claims ("RICO") under Rule 12(b)(6), alleging that the Complaint does not comply with Rule 9(b). The Motion should be denied because Plaintiffs have pled facts with sufficient particularity to meet the elements of a RICO violation and to give notice to Highland of the claims against it.

"Regardless of subsection, RICO claims under § 196[4] [sic] have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). To recover under § 1964(c), a plaintiff must plead that the elements of a

substantive RICO violation as well as that it "has been injured in [its] business or property by the conduct constituting the violation." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985).

We address the elements in turn.

### 1. Highland is a "RICO" Person

Plaintiffs have alleged that Highland is a RICO person for the purposes of the RICO claim via its conduct by James Seery. (Compl. ¶¶ 129-133). Highland takes no issue with this element in its Motion.

### 2. Plaintiffs Have Pled a RICO "Enterprise"

For the purpose of RICO, an "enterprise" may be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, "[a] RICO enterprise can be either a legal entity or an association-in-fact." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995).

Plaintiffs have alleged that HCLOF may rightly be considered an enterprise unto itself because it is a legal entity. (Compl. ¶¶ 5, 115). *Crowe*, 43 F.3d at 204.

Additionally, Plaintiffs have alleged that the association between HCLOF, HCFA and Highland is rightly an "association in fact" enterprise (Compl. ¶ 115-116). HCFA was the portfolio manager of HCLOF, and Highland operated HCFA as its wholly owned subsidiary (Compl. ¶ 24). HCFA—and by extension, Highland—was able to exert near plenary power over HCLOF under the HCLOF Company Agreement.[14] An association-in-fact enterprise "1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization and 3) its

---

[14] The HCLOF Company agreement is incorporated by reference in the Complaint, (Compl. ¶ 93). The Court is thus permitted to consider it alongside this Response. *Accord In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (contracts referenced in the complaint may be considered as part of a 12(b)(6) consideration).

members must function as a continuing unit as shown by a hierarchical or consensual decision-making structure." *Crowe*, 43 F.3d at 205. Here, all three of these have been met:

*__First__*, the association in fact has an existence separate and apart from the pattern of racketeering. [15] HCLOF is an investment vehicle run by HCFA and Highland pursuant to contracts between and among them, such as the HCLOF Company Agreement at Recital B which explains the "Business" in which HCLOF was to engage (App_20).

*__Second__*, the association-in-fact was an ongoing association amongst the three since the 2017—well before the alleged acts of racketeering began.

*__Third__*, they functioned as a continuing unit given their hierarchical, consensual decision-making structure. *Accord Crowe*, 43 F.3d at 205 (holding that farming venture was association in fact because it existed outside of the purpose to commit fraud and theft, and therefore satisfied association in fact enterprise).

Accordingly, the "enterprise" element has been met in two different ways.

### 3.  <u>Plaintiffs Have Pled a Pattern of Racketeering Activity with Particularity</u>

"'Racketeering activity' consists of two or more predicate criminal acts that are (1) related and (2) 'amount to or pose a threat of continued criminal activity.'" *Abraham*, 480 F.3d at 355 (quoting *Sawyer*, 90 F.3d at 122).

RICO defines a "pattern of racketeering activity" as one comprised of "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of

---

[15] Highland contends that there is no separateness because it and HCFA are defendants. But the mere fact that Highland and HCLOF are both defendants and part of the enterprise, or that HCLOF is both an enterprise unto itself and part of an enterprise-in-fact, do not defeat the "enterprise" element. *Accord Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994).

which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C.S. § 1961(5). Racketeering activity includes, relevantly, "(B) any act which is indictable under any of the following provisions of title 18, United States Code: …section 1341 (relating to mail fraud), section 1343 (relating to wire fraud),…[or] (D) any offense involving fraud connected with a case under title 11 […and ] fraud in the sale of securities." *See* 18 U.S.C.S. § 1961(1)(B) and (D).

Plaintiffs plead that Highland conducted and controlled the enterprise (whether HCLOF or the Highland-HCFA-HCLOF enterprises) through a pattern of violations of the wire fraud statute, breaches of the Advisers Act's antifraud provisions in 15 U.S.C. § 80b-6, and the acts and omissions designed to defraud Plaintiff of the HarbourVest Interests in HCLOF (Compl. ¶ 132).

### Wire and Mail Fraud

"To establish either mail or wire fraud, the plaintiffs must only [plead] fraudulent intent; proof of a successful fraudulent scheme is not necessary." *Laird v. Integrated Res.*, 897 F.2d 826, 839 (5th Cir. 1990). The use of the wires to achieve any part of the scheme is sufficient—one need not allege (much less prove) that an allegedly fraudulent statement was uttered or communicated through the interstate mails or wires. *Accord United States v. Westbo*, 746 F.2d 1022, 1025-26 (5th Cir. 1984) ("when a defendant is proved to be a participant in a scheme to defraud and a document is mailed in furtherance of the scheme, the defendant may be convicted of mail fraud.").[16]

Here, the Original Complaint alleges that:

15.     On or about October 16, 2019, Highland Capital Management filed for Chapter 11 bankruptcy in Delaware Bankruptcy Court, which was later transferred to the

---

[16] Mail fraud precedent counts for wire fraud. *United States v. Bruno*, 809 F.2d 1097, 1104 (5th Cir. 1987) ("Because the requisite elements of 'scheme to defraud' under the wire fraud statute, 18 U.S.C. § 1343 and the mail fraud statute are identical, cases construing  mail fraud  apply to the wire fraud statute as well.");

Northern District of Texas Bankruptcy Court, in the case styled In Re: Highland Capital Management, L.P., Debtor, Cause No. 19-34054…

17.    The debtor, HCM, made an omnibus response to the [HarbourVest] proofs of claims, stating they were duplicative of each other, overstated, late, and otherwise meritless.

29.    On December 23, 2020, HCM moved the Court to approve a settlement between itself and HarbourVest. No discovery had taken place between the parties, and Plaintiff did not have any notice of the settlement terms or other factors prior to the motion's filing (or even during its pendency) in order to investigate its rights.

31.    On January 14, 2021, the Bankruptcy Court held an evidentiary hearing and approved the settlement in a bench ruling, overruling the objections to the settlement.

119.    In or about November 2020, HCM and HarbourVest entered into discussions about settling the HarbourVest Claims. Seery's conduct of HCLOF and HCLA on behalf of HCM through the interstate mails and/or wires caused HCM to agree to the purchase of HarbourVest's Interests in HCLOF.

120.    On or about each of September 30, 2020, through December 31, 2020, Seery, through his conduct of the enterprise, utilized the interstate wires and/or mails to obtain or arrive at valuations of the HCLOF interests. Seery's conduct of the enterprise caused them to cease sending the valuation reports to Plaintiffs, which eventually allowed Plaintiffs to be misled into believing that Seery had properly valued the interests.

121.    On or about September 30, 2020, Seery transmitted or caused to be transmitted though the interstate wires information to HCLOF investors from HCM (via HCFA), including HarbourVest, regarding the value of HCLOF interests and underlying assets.

122.    Additionally, Seery operated HCM in such a way that he concealed the true value of the HCLOF interests by utilizing the interstate wires and mails to transmit communications to the court in the form of written representations on or about December 23, 2020, and then further transmitted verbal representations of the current market value (the vastly understated one) on January 14, 2021, during live testimony.

124.    The HCLOF net asset value had reached $86,440,024 as of December 31, 2021, which means that by the time Seery was testifying in the Bankruptcy Court on January 14, 2021, the fair market value of the HarbourVest Assets was $22.5 million, when it was actually closer to $43,202,724. Seery, speaking on behalf of HCM, knew of the distinction in value.

125.    On January 14, 2021, Seery also testified that he (implying HCM, HCLA and HCLOF) had valued the HarbourVest Assets at their current valuation and at fair market value. […]

126.    In supporting HCM's motion to the Bankruptcy Court to approve the HarbourVest Settlement, Seery omitted the fact that HCM was purchasing the interests at a massive discount, which would violate the letter and spirit of the Adviser's Act.

129.    Seery was at all relevant times operating as an agent of HCM.

Compl. ¶¶ *passim*. Defendant's contention that the allegations of the use of the mails and wires were not sufficiently pled under Rule 9(b) is meritless.[17]

### Fraud in Connection the Sale of a Security

The violation of the securities laws, including the Investment Advisers Act if it is in connection with the sale of securities, can serve as a predicate to a RICO claim. *See* 18 U.S.C.S. § 1961(1)(D). *See also Youmans v. Simon*, 791 F.2d 341, 348 (5th Cir. 1986); *Laird v. Integrated Res.*, 897 F.2d 826, 839 (5th Cir. 1990).

Here, Plaintiffs have already addressed above why the scheme of self-dealing and self-enrichment alleged in the Complaint constitute violations of the Advisers Act. *See supra. See also* Comp. ¶¶ 55-91; 113-133. That these were in connection with the sale of HCLOF interests which are securities is uncontested. Indeed, the HCLOF Company Agreement provides that the ownership interests are "ordinary shares" and that shareholders generally own passive interests in HCLOF.[18] 15 U.S.C. § 80b-6 specifically states that it shall be unlawful to use the interstate wires

---

[17]    There are additional allegations of using the interstate wires and instrumentalities of interstate commerce to reach the settlement because the parties were in different states (Compl. ¶¶ 1-5, 119), to conduct valuations of the HCLOF interests on or about September 30, 2020 (Compl. ¶¶ 40, 120), to communicate valuations which themselves were false (Compl. ¶ 121), to cause the motion for approval of the settlement to be filed in the bankruptcy court on December 23, 2020 via ECF (Compl. ¶ 122), misrepresenting the value of the assets in live court testimony (which was obviously conducted remotely via Webex (App_5)) (Compl. ¶ 122), that Seery had travelled to Dallas in December 2020 to attend a meeting wherein he received material information (Compl. ¶ 127), among several others.

[18]    (App__0024-25 (discussing control of business of HCLOF is in Board and Portfolio Manager)), HCLOF Company Agreement at ¶¶ 1.1 (HCFA is Portfolio Manager), ¶ 3.2 (power of Portfolio Manager to decide the value of assets), ¶ 4.1 (power of Portfolio Manager to run HCLOF's business and make investment decisions unilaterally), ¶ 4.3 (power of Portfolio Manager to take any action unless it requests approval "in its sole discretion", unless narrow exceptions apply), ¶ 5.3 (power of Portfolio Manager to take over shares from defaulting Member)), ¶ 9.1 (power of Portfolio Manager to dissolve company).

---

or mails, or "any instrumentality of interstate commerce" in connection with any of the violative courses of conduct. The violations and nexus to the instrumentalities of interstate commerce have already been addressed above and are incorporated herein.

Accordingly, because there are numerous predicate acts that allege a fraud in *connection with* the sale of a security (e.g., the sale of the HarbourVest Interests to Highland as opposed to CLO Holdco), these acts, together and when combined with the alleged acts of use of the interstate wires and mail, form a pattern of racketeering activity.

### 4. **Plaintiffs Have Pled a Basis to Infer Scienter**

To establish a RICO claim based on a pattern of mail or wire fraud, the plaintiff must plead that the defendant "act[ed] knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *United States v. Akpan*, 407 F.3d 360, 370 (5th Cir. 2005). This can be met through pleading circumstantial evidence from which knowledge or intent can reasonably be inferred. *Ranieri v. Advocare Int'l, L.P*., 336 F. Supp. 3d 701, 716 (N.D. Tex. 2018) (finding scienter met through circumstantial evidence).

Here, Plaintiffs allege that Highland knew of its disclosure obligations when trading in securities that its advisees and those to whom it owes fiduciary duties may be interested, and that it is charged with knowing them because it is a Registered Investment Adviser under the Advisers Act (Compl. ¶ 4, 11). It is charged with such an awareness of its duties as well, and with the SEC's rules. *See* SEC Release at p. 6. The Advisers Act requires Highland to maintain policies and procedures that will ensure compliance with its fiduciary duties. *See* SEC Release at p. 21-22 (and footnotes therein). Indeed, Plaintiffs alleged that Highland's policies and procedures were supposed to prevent its trading adverse to its investors (Compl. ¶ 46). Jim Seery admitted that he and Highland had these fiduciary duties under the Advisers Act (App_0009, 0014).

---

Plaintiffs have also alleged that Seery knew or should have known the value of the HarbourVest Interests at the time her was negotiating with Harborne's, and at the time of the approval hearing in January 2021. *See* Compl. ¶¶ 45, 76. The Company Agreement imposes a duty to manage that as well (App_ 0023, 0029-30 (noting the ongoing duty to calculate the NAV (net asset value, and financial reporting duties)).

These are undisputed facts. Therefore Highland cannot credibly disclaim awareness of fiduciary duties in connection with the sale of HCLOF interests from HarbourVest to itself. Plaintiffs have credibly pled that Highland was aware that it was purchasing the HarbourVest Interests at a substantial discount to the then-current NAV, which was a corporate opportunity that it contractually would have been aware belonged to HCLOF or its investors (App_0020; 0023).

Thus, a reasonable jury could infer from these facts that Highland purposefully withheld the disclosures and information it was obligated under the Advisers Act to supply, for the specific purpose of taking advantage of the HarbourVest Interests (a gain for Highland), while intending to deprive Plaintiffs of that interest (a pecuniary loss to Plaintiffs). Courts have found adequate lesser allegations of scienter. *Accord Ranieri*, 336 F. Supp. 3d at 716.

**5.   <u>Plaintiffs Have Pled Injury to Their Business or Property Due to the RICO Violations</u>**

Plaintiffs have been injured because it was wrongfully deprived of the HarbourVest Interests in HCLOF through a pattern of racketeering activity (Compl. ¶¶ 133). Contrary to the suggestion by the Defendant, the Supreme Court has held that a RICO plaintiff need not allege a "RICO injury" separate and apart from the injury arising from the racketeering activity itself. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985).

As the Supreme Court put it in *Bridge v. Phoenix Bond & Indemnity Co.*: "[A] person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any

_____

misrepresentations.'" The Court explained that "[p]roof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, but there is no sound reason to conclude that such proof is always necessary." *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 649 (2008). "Moreover, a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Id*. Specifically, if they have lost the right to obtain a valuable asset. *Id*. ("Accepting their allegations as true, respondents clearly were injured by petitioners' scheme: As a result of petitioners' fraud, respondents lost valuable liens they otherwise would have been awarded. And this is true even though they did not rely on petitioners' false attestations of compliance with the county's rules.") *Id*.

Here, Plaintiff CLO Holdco has alleged that but for Highland scheme to deprive Plaintiffs of the HarbourVest Interests, and the actions taken in connection with it, Highland would have otherwise been forced to disclose the entire transaction first because of the conflict of interest, and to purge that interest it would have had to offer it to the Plaintiffs. Plaintiff Holdco has alleged that had it been offered the HarbourVest Interests, it would have paid cash for it. (Compl. ¶ 50). Highland contends this allegation is "speculative." While Highland can investigate in discovery whether Holdco had the cash is actually true, that does not render the allegation speculative.

### 6.  Highland's Defenses Are Legally Infirm or Improper at the 12(b)(6) Stage

Highland contends that under various precedent, the fact that Plaintiffs have pled a single transaction that is alleged to be fraudulent is insufficient to make out a RICO claim, and that it lacks the requisite "continuity." However, the Fifth Circuit in *R.A.G.S. Couture, Inc. v. Hyatt*, held that two alleged uses of interstate wires, in a short period of time, and connected to a single transaction alleged to have been fraudulent, was sufficient to state a claim under RICO. 774 F.2d 1350, 1351-53 (5th Cir. 1985). The Fifth Circuit rejected the arguments raised by Highland here,

that "more" is needed, noting also that the Supreme Court had "held that an enterprise may be organized solely for illegitimate purposes, and that evidence of the existence of the enterprise may coalesce with evidence of the underlying pattern of racketeering." *Id.* at 1353. *Accord Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1129 (5th Cir. 1988) (following *R.A.G.S.,* and holding plaintiff's allegation of "over half a dozen acts of mail fraud and wire fraud, each of which stems from Westside's bond offer" and in a short period of time).

Highland's reliance on the Supreme Court's opinion in *H.J. Inc. v. Northwestern Bell Tel. Co.* is also misplaced. There, the Supreme Court pointed out that continuity does not require a showing of *separate* illegal schemes. 492 U.S. 229, 236 (1989) ("We find no support in those sources for the proposition, espoused by the Court of Appeals for the Eighth Circuit in this case, that predicate acts of racketeering may form a pattern only when they are part of separate illegal schemes."). Contrary to Highland's taxing interpretation, *H.J.* merely held that the predicate acts have to relate to each other in order to constitute a "pattern". *Id.* at 239. Highland's contention that the Court's reference to a "threat of continuing activity.[19]

Therefore, Highland's objections should be overruled and its Motion denied.

## VI.

## <u>MOTION FOR LEAVE TO AMEND</u>

Plaintiffs respectfully ask for leave to amend in the alternative to cure any pleading deficiencies that the Court determines exist. A court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d

---

[19] Plaintiff would further suggest that upon amendment, Plaintiff would plead that there is a pattern of violations of the Advisers Act by Highland over the course of the past year, one threatens to continue unabated into the future because Highland has clearly decided to shirk fiduciary duties to the investors in its funds.

594, 598 (5th Cir. 1981). Leave to amend "should not be denied 'unless there is a *substantial reason* to do so.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (emphasis added) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

Amendment would not be futile because—to the extent necessary under Rule 9(b)—Plaintiffs could add more detail on the instrumentalities of interstate commerce and address in further detail the allegations claimed to be deficient. The balance between Rule 8 and Rule 9(b) is not always perfect on the first try, and Plaintiffs should not be dismissed for want of an opportunity to cure any deficiencies. Plaintiffs further would request the opportunity to add a Rule 10b-5 claim, which can be premised on violations of the Advisers Act. *Laird v. Integrated Res.*, 897 F.2d 826, 835 (5th Cir. 1990 (recognizing that Advisers Act violations can be a basis for 10b-5 liability, holding that "for the purpose of rule 10(b)-5, an investment adviser is a fiduciary and therefore has an affirmative duty of utmost good faith to avoid misleading clients. This duty includes disclosure of all material facts and all possible conflicts of interest."). Plaintiffs would finally request to add a claim under the Advisers Act to divest *Highland* of the rights it obtained in violation thereof under 15 U.S.C. § 80b-15(b). *Transamerica Mortg. Advisors (tama) v. Lewis*, 444 U.S. at 17 (finding private right of action under Section 215 of Advisers Act to seek equitable relief to disgorge rights obtained in violation of the Advisers Act).

## VII.

## <u>CONCLUSION</u>

For the foregoing reasons, the 12(b)(6) motion should be denied in full.

---

Dated:  June 29, 2021                              Respectfully submitted,

                                                  **SBAITI & COMPANY PLLC**

                                                  */s/  Mazin A. Sbaiti*
                                                  **Mazin A. Sbaiti**
                                                  Texas Bar No. 24058096
                                                  **Jonathan Bridges**
                                                  Texas Bar No. 24028835
                                                  JPMorgan Chase Tower
                                                  2200 Ross Avenue – Suite 4900W
                                                  Dallas, TX  75201
                                                  T:  (214) 432-2899
                                                  F:  (214) 853-4367
                                                  E:  mas@sbaitilaw.com
                                                      jeb@sbaitilaw.com

                                                  **Counsel for Plaintiffs**